IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAMES LEONARD TONEY                                        PLAINTIFF

v.                      Civil No. 6:17-CV-06130

SHERIFF MIKE CASH, CHIEF DEPUTY                       DEFENDANTS
RICHARD TOLLISON, JAIL
ADMINSTRATOR KEN FAIN, and AST.
ADMINISTRATOR T.J. BURNET (Hot
Springs County Jail)

**OPINION AND ORDER**

Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 27). The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 19). Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**I. BACKGROUND**

Plaintiff filed his Complaint on December 13, 2017. (ECF No. 1). He alleges his constitutional rights were violated while he was incarcerated as a pre-trial detainee in the Hot Spring County Jail ("HSCJ"). (ECF No. 1 at 2-3). Specifically, Plaintiff alleges that on November 1, 2017, he was told that the jail would no longer mail letters for inmates; instead inmates must purchase their own stamps. Plaintiff further alleges that the facility closed their commissary, so inmates do not have a way to purchase stamps. (ECF No. 1 at 4). He further alleges "his people are poor they have to work," which the Court interprets to mean that he is indigent. Plaintiff alleges this has prevented him from contacting his family or his attorney and has restricted his ability to

1

send documents to this Court. (ECF No. 1 at 5). As his second claim, Plaintiff alleges he is being denied fresh air and exercise. He alleges the facility stopped taking him outside for "fresh air exercise" or recreation on October 1, 2017. Plaintiff alleges it is "very stuffy" inside, and inmates are staying sick and fighting as a result. Plaintiff does not allege that he became ill. (ECF No. 1 at 5-6). As his third claim. Plaintiff alleges he and other inmates are being denied sufficient calories in their daily meals. (ECF No. 1 at 6). Plaintiff alleges the meals are the same each day and consist of the following:

- Breakfast: 1 slice white bread, 4 ounces oatmeal
- Noon meal: 1 bologna sandwich, 5 potato chips, 1 cookie (1.5 inches in diameter)
- Last Chow: 1 slice white bread, 1 cookie (1.5 inches in diameter), 3 ounces brown beans, and 3 ounces mixed vegetables. Plaintiff alleges the vegetables were removed from the menu on December 2, 2017.

Plaintiff proceeds against all Defendants in their official and personal capacities. (ECF No. 1 at 4-6). Plaintiff seeks compensatory and punitive damages, and for the issues to be "addressed." (ECF No. 1 at 7).

On January 29, 2018, Plaintiff filed a Motion to Amend his Complaint, stating he wished to clarify that he was seeking monetary damages, and that he wished to hold the Sheriff's Department liable for the actions of their officers. (ECF No. 8). On March 20, 2018, Plaintiff filed a Supplement with exhibits to support his Complaint. (ECF No. 16). These same documents were later attached to Plaintiff's Summary Judgment Response. (ECF No. 31).

Defendants filed their Motion for Summary Judgment on November 6, 2018. (EC No. 27). On November 7, 2018, the Court entered an Order directing Plaintiff to file a Response to the Motion, which he did on November 29, 2018. (ECF No. 30, 31).

2

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

Defendants argue summary judgment in their favor is appropriate because: (1) Plaintiff failed to exhaust any grievances concerning the allegations in his Complaint prior to filing this case (ECF No. 28 at 2); (2) Plaintiff failed to Plaintiff cannot demonstrate that his alleged injuries resulted from a policy or custom in place at HSCJ; (3) Defendant Cash had no personal

involvement in Plaintiff's alleged constitutional violation; (4) Defendant are entitled to qualified immunity as there was no constitutional violation. (ECF No. at 29).

Plaintiff argues inmates were told they would not be going outside for recreation.[1] (ECF No. 31 at 1). He further argues they were told there would be "no more mailing of any kind," the stamp machine was removed, and there was no commissary. (*Id*. at 1-2). He attached a copy of an internal document labelled "Attention Gentleman," which appears to be a notice to the guards concerning envelopes, medications, and phone calls for inmates. (ECF No. 31-1 at 1). He argues inmates received "500 or less calories a day per person" and received only bread and beans for the last meal of the day. (ECF No. 31 at 1-2). In his Response, Plaintiff attached a grievance dated April 5, 2018, asking Lieutenant Lingo when things would be normal as to mail, food, and recreation. Plaintiff argues Lingo's response shows there were existing problems that Lingo was attempting to fix. (ECF No. 31 at 2; 31-1 at 3).

Plaintiff proceeds against all Defendants in their official and personal capacities for all claims. Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit Court of Appeals discussed the distinction between individual and official capacity suits. As explained by the Court in *Gorman*:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S.Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may

---

[1] Plaintiff also alleges they were told they could not exercise inside either. (ECF No. 31 at 1). This allegation was not made in his Complaint and will therefore not be considered.

be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d at 914.

A custom conflicting with a written policy can support an official capacity claim. *Johnson v. Douglas County Med. Dept.*, 725 F.3d 825, 829 (8th Cir. 2013) However, to establish the existence of such a custom, Plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Id.* at 828. Under this standard, "multiple incidents involving a single plaintiff could establish a custom if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials." *Id.*

### A. Failure to Exhaust Administrative Remedies

Plaintiff failed to exhaust his administrative remedies because he failed to file or exhaust any grievances concerning his claims prior to filing his Complaint in this case. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). The "level of detail

5

necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). The purpose of the exhaustion requirement is to "give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Proper exhaustion demands compliance with an agency's deadlines." *Id*.

In their Statement of Facts Defendants note that Plaintiff submitted no grievances concerning the contents of his Complaint prior to filing it with this Court. (ECF No. 28 at 2). They argue Plaintiff only filed two grievances in March 2018 during the pendency of this matter. In both grievances, Plaintiff complains about tuberculosis lights. (ECF No. 28-4). They also provided a copy of a request by Plaintiff to call his attorney and insurance company. This request was dated February 28, 2018. (ECF No. 28-4 at 1). Plaintiff does not dispute the contents or timing of the two grievances or the request, providing only a copy of a grievance dated April 5, 2018, in support of his claims. (ECF No. 31-1 at 3). Plaintiff's Complaint in this case was filed December 13, 2017. He therefore failed to exhaust his administrative remedies concerning his claims prior to filing his Complaint.

Because Plaintiff did not exhaust his administrative remedies for his claims, Defendant are entitled to summary judgment as a matter of law.

### B. Denial of Mail Privileges

Plaintiff's allegation that HSCJ had a policy or custom of completely denying mail privileges to indigent prisoners, and Defendants personally implemented that policy or custom, is contradicted by the summary judgment record.

6

Inmates have a First Amendment right of free speech to send and receive mail. *Hudson v. Palmer*, 468 U.S. 517, 547 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977). Restrictions on this First Amendment right are valid "only if [they are] reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987). The Eighth Circuit has held that there is no right to unlimited free postage for legal mail, and no right to free postage for non-legal mail. *Blaise v. Fenn*, 48 F.3d 337, 339 (8th Cir. 1995); *Herschberger v. Scaletta*, 33 F.3d 955, 957 (8th Cir. 1994); *Kaestel v. Lockhart*, 746 F.2d 1323, 1325 (8th Cir. 1984). The reasoning in these cases, however, relied in part on the fact that the indigent plaintiffs had access to alternative sources for postage within the facility. *See Blaise*, 48 F.3d at 339-40 (inmates were provided an allowance each month which could be used for postage); *Herschberger*, 33 F.3d at 957 n.4 (inmates could receive free postage for personal mail through their prison counselor); *Kaestel*, 746 F.2d at 1325 (inmates could receive postage assistance through the state chaplains' fund).

Here, the summary judgment record shows that the facility did not have a policy of denying indigent prisoners mail privileges. To the contrary, HSCJ policy expressly states that indigent prisoners will be provided with writing materials and postage for two letters per week. The provision is not limited to legal mail. (ECF No. 28-2 at 5). Further, the internal document Plaintiff attached as evidence of his claim specifically instructs guards to pass out two envelopes and four pieces of paper to indigent prisoners every Sunday night. (ECF No. 31-1 at 1). The provision of two free mailings per week for indigent prisoners satisfies constitutional standards. *See Smith v. Erickson,* 961 F.2d 1387, 1388 (8th Cir. 1992) (policy of providing indigents with one free mailing per week for legal correspondence satisfies constitutional standards).

7

Nor does Plaintiff provide any summary judgment evidence to show he was denied mail privileges on multiple occasions sufficient to establish the presence of a custom conflicting with the actual written policy, or that he suffered an injury as a result. In his Complaint, Plaintiff alleges that on November 1, 2017, he was told that the jail would no longer mail letters for inmates; instead inmates must purchase their own stamps. (ECF No. 1 at 4). Plaintiff alleges he was not able to contact his family or attorney as a result. (ECF No. 1 at 5). In his Response, Plaintiff alleges Defendant Cash called a meeting of jailers in September 2017. (ECF No. 31 at 1). After the meeting, the jailer and sergeant told him there would be "no more mailing of any kind." (*Id.*). Plaintiff attached a grievance to his response dated April 5, 2018. (ECF No. 31-1). In this grievance Plaintiff states he knows Lingo started work at HSCJ in February or March of 2018, and asks when things would be back to normal regarding mail, food, and recreation, so that Lingo could be excused from the § 1983 lawsuit. Lingo replied that he started work on February 5, 2018, and, while he did not know how things were done prior, it has been running the way it should be since he has been there. (*Id.*).

Regarding Plaintiff's claim about personal mail, there is no right to free postage for non-legal mail. *Blaise v. Fenn*, 48 F.3d 337, 339 (8th Cir. 1995); *Herschberger v. Scaletta*, 33 F.3d 955, 957 (8th Cir. 1994); *Kaestel v. Lockhart*, 746 F.2d 1323, 1325 (8th Cir. 1984). As discussed above, HCSJ policy and custom provides for two stamped envelopes a week to indigent inmates for both legal and non-legal mail. Nor does Plaintiff identify any incidents where he was denied the opportunity to send mail to his family, other than a single vague reference to a sister having heart surgery in October. (ECF No. 1 at 4). Vague and conclusory statements are insufficient to raise a question of material fact concerning his alleged denial of personal mail at HSCJ. *See*

*McClanahan*, 2016 WL 520983, at *6 ("Conclusory, non-specific statements in an affidavit or verified complaint" are insufficient to survive summary judgment).

Plaintiff describes no specific incident where he was denied the opportunity send legal mail and his vague allegation that he was prevented from doing so is contradicted by the record. He was able to mail his Complaint to this Court in December 2017 followed by his Motion to Amend in January 2018. Both of these documents were sent during the time that Plaintiff alleged there was "no more mailing of any kind" and prior to the time when Lt. Lingo was hired and, according to Plaintiff, remedied the alleged issues at the facility. Further, the summary judgment record reflects that he asked to contact his lawyer and insurance company by phone on February 28, 2018. This request was granted on March 2, 2018. (ECF No. 28-4). Plaintiff made no statement in the request form indicating that he previously tried to send mail to his attorney or insurance company and was prevented from doing so. (*Id*.). Vague and conclusory statements are insufficient to raise a question of material fact concerning his alleged denial of legal mail at HSCJ. *See McClanahan*, 2016 WL 520983, at *6 ("Conclusory, non-specific statements in an affidavit or verified complaint" are insufficient to survive summary judgment).

Finally, Plaintiff has not alleged he suffered any injury as a result of any HSCJ policy or custom concerning indigent mail privileges. Thus, Plaintiff's allegation that HSCJ had a policy or custom of completely denying mail privileges to indigent prisoners, and Defendants personally implemented that policy or custom, is contradicted by the summary judgment record.

Defendants are therefore entitled to summary judgment as a matter of law.

### C. Denial of Adequate Nutrition

Plaintiff's allegation that HSCJ had a policy of providing prisoners with less than 500 calories per day, and Defendants personally implemented that policy, is contradicted by the summary judgment record.

9

"Constitutional standards require only that prison authorities provide an inmate with well-balanced meals, containing sufficient nutritional value to preserve health." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (internal quotation marks and citation omitted). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (expressing doubt that Talib who missed about fifty meals in five months and lost fifteen pounds met this threshold) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (even on a regular permanent basis, two meals a day may be adequate). *See also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (claim that inmate missed eight meals properly dismissed as frivolous); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (Eighth Amendment not violated when inmate served only one meal a day for fifteen consecutive days where the one meal was sufficient to maintain normal health).

The HSCJ food policy states sedentary detainees are to receive a minimum of 2300 calories, while active detainees will receive a minimum of 2700 calories. (ECF No. 28-2 at 2). These meals will contain the recommended dietary allowances and the basic four food groups. (*Id*.). The menus for the meals are reviewed at least once annually by a Registered or Certified Dietician from the Hot Spring County Medical Center to ensure the nutritional adequacy of the menu. (*Id*.). A copy of the menu was provided for a week in March 2018, and the menu is more than adequate, including hot meals for breakfast and dinner and sandwiches with snacks at lunch. (ECF No. 28-3). Plaintiff makes the statement in his Response to Summary Judgment there was a 500 to 600 calorie daily provision of nutrition. He offers no summary judgment evidence to support this claim. Further, Plaintiff makes no allegation that he lost any weight or suffered any

other indicia of diminished health from the diet he received at HSCJ. Other than the bare allegations in his Complaint and Response, there is no evidence in the summary judgment record that Plaintiff was denied adequate nutrition during incarceration at HSCJ. Vague and conclusory statements are insufficient to raise a question of material fact concerning his alleged denial of nutrition at HSCJ. *See McClanahan*, 2016 WL 520983, at *6 ("Conclusory, non-specific statements in an affidavit or verified complaint" are insufficient to survive summary judgment).

There is no genuine issue of material fact concerning Plaintiff's claim that HSCJ had a policy or custom of denying prisoners adequate nutrition or that Defendants personally implemented that policy.

Defendants are therefore entitled to summary judgment as a matter of law.

**D. Denial of Recreation**

Even if true, Plaintiff's allegation that HSCJ had a policy or custom of denying inmates outdoor recreation, and Defendants personally implemented that policy, fails to rise to the level of a constitutional violation.

A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). Plaintiff did not allege he suffered muscle atrophy or any damage to his health as a result of being denied outdoor recreation time.

There is no genuine issue of material fact concerning Plaintiff's claim that he was denied adequate exercise because he could not go outdoors for recreation and Defendants are entitled to summary judgment as a matter of law.

## IV.  CONCLUSION

For these reasons, IT IS ORDERED that Plaintiff's claims are DISMISSED WITH PREJUDICE.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

IT IS SO ORDERED this 30th day of July 2019.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE